UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------
CHASE BANK USA, N.A.,                             Case No. 1:09-cv-09795

                         Plaintiff,

                                             **FIRST AMENDED**
   -against-                                    **COMPLAINT**

UNIFUND PORTFOLIO A LLC,

                         Defendant.
------------------------------------------------------------------------

      Plaintiff, Chase Bank USA, N.A. ("Chase"), by and through its attorneys, Stagg, Terenzi, Confusione & Wabnik, LLP, as and for its Complaint, alleges as follows:

### The Parties

      1.    At all times hereinafter mentioned, Chase was and is a national banking association, federally chartered and existing under the laws of the United States, with its main office in the State of Delaware.

      2.    Upon information and belief, at all times hereinafter mentioned, defendant Unifund Portfolio A LLC ("Unifund") was and is a limited liability company organized under the laws of Ohio, with a principal place of business at 10625 Techwood Circle, Cincinnati, Ohio.

### Jurisdiction and Venue

      3.    This Court has jurisdiction over this action because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

      4.    Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(a)(3).

**Background**

5.  Chase operates MasterCard and Visa credit card programs, which may include revolving credit products other than credit cards, pursuant to which accounts are established or maintained for cardholders. When a customer is delinquent on a credit card account, Chase attempts to collect on the debt, first internally, and then after charge-off, through outside agencies. Typically, if collection is unsuccessful by third-party collectors, Chase will sell it to a debt purchaser, such as Unifund.

6.  Most sales of charged-off debt occur in large pools. Some of these pools are sold pursuant to long-term contracts, called "forward-flow" contracts.[1] Forward-flow contracts are attractive to buyers because they provide a reliable supply of a company's debt pool and are attractive to sellers because they provide a reliable way to remove debt from their books.

7.  The pool of charged-off debt sold in a forward-flow contract sells at a steep discount to its face value, usually for cents on the dollar because the accounts are charged off. The accounts that are collected usually require some expenditure of costs.

8.  Prior to purchasing charged-off accounts, a buyer such as Unifund must ascertain whether the price of the debt will allow it to make a profit, taking into consideration factors such as who the issuer is, the geographic distribution of the accounts, the laws of the states where the accounts are located, the terms and conditions of the particular debtor accounts, how old the

---

[1] A "forward-flow" agreement for credit card debt typically allows a seller to transact a series of sales of as yet unidentified portfolios throughout a pre-determined future term. In general terms, the contract defines the characteristics of the receivables to be sold and the seller commits to selling receivables with those characteristics to the buyer periodically during the term of the agreement. The buyer is committed to buying each monthly tranche, provided the individual debts comply with the terms of the contract. *See generally*, *Single Sale or Forward Flow?* By Glen Crawford, Credit Management, April 2004, *http://findarticles.com/p/articles mi_qa5308 /is_200404 /ai_n21347162/. See also Bloomberg.com,* Financial Glossary, http://www.bloomberg.com/invest/glossary/ bfglosf.htm, which defines "Forward Sale" as "[a] method for hedging price risk that involves an agreement between a lender and an investor to sell particular kinds of loans at a specified price and future time."

accounts are, and how recently payments were made and how many payments were made on an account.

9. Over the past six years, Chase and Unifund have negotiated and entered into various contracts for the sale of charged-off credit card accounts to Unifund. The contracts were customarily twelve months in duration, at a set price, with eligible charged-off accounts presented by Chase to Unifund on a monthly basis. While Unifund had the opportunity to conduct data verification to determine whether the accounts were "ineligible," as defined in the contracts, Unifund was not empowered under the contracts to reject eligible accounts.

10. Because Unifund sought to collect the outstanding balance from defaulting cardholders of the purchased charged-off accounts, Unifund was not interested in acquiring ineligible accounts from Chase. Pursuant to these contracts, an account was defined as "ineligible" if the: (i) cardholder filed or became subject to bankruptcy proceedings; (ii) cardholder asserted the account or any transaction on the account was fraudulently originated; (iii) statute of limitations elapsed; (iv) cardholder died; (v) account was subject to litigation or class action; or (vi) account was settled.

11. While most of the contracts referenced a certain minimum percentage of eligible charged-off accounts that Chase "desired" to offer to Unifund and that Unifund, in turn, "desired" to purchase (i.e., no less than 70% of the eligible Charged-Off Accounts), pursuant to the terms of the contracts Unifund was obligated to purchase all eligible Charged-Off Accounts that Chase listed either on a diskette or a spreadsheet provided to Unifund.

**The Contracts Between Chase and Unifund
Leading up to Unifund's Breach of the 2008 Contract[2]**

*July 2003 Secondary Recall Account Contract[3]*

12. On or about July 25, 2003, Bank One, Delaware, N.A. ("Bank One") and Unifund CCR Partners ("Unifund Partners") entered into a contract for the sale by Bank One of Charged-Off Accounts to Unifund Partners ("2003 Contract").[4]

13. Section 2(a) of the 2003 Contract provided: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase, for the Purchase Price, effective as of the Applicable Cut-Off Date, all of Seller's rights, title and interest in and to the Charged-off Accounts identified in the file delivered by Seller to Purchaser on the Applicable Cut-Off Date.... [and] listed on Exhibit 1 to the Bill of Sale on the Applicable Closing Date.

14. During the course of the 2003 Contract, Bank One sold to Unifund Partners and Unifund Partners accepted for delivery the Charged-Off Accounts identified in the files delivered by Bank One to Unifund Partners.

15. Upon information and belief, in connection with the 2003 Contract, Unifund Partners purchased all of the eligible Charged-Off Accounts from Bank One.

*July 2004 Secondary Recall Account Contract*

16. On or about July 27, 2004, Bank One and Unifund Partners entered into a contract for the sale by Bank One of Charged-Off Accounts to Unifund Partners ("July 2004 Contract").

---

[2] Including contracts between Chase's predecessors in interest and Unifund's affiliates.

[3] Secondary Recall Accounts refers to those accounts that are recalled by the bank from a third-party collection agency after two collection agency attempts have been made to collect the debt.

[4] Chase Manhattan Bank USA, N.A. ("Chase Manhattan") was successor through merger with Bank One, Delaware N.A.

17. Section 2(a) of the July 2004 Contract provided: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase, for the Purchase Price, effective as of the Applicable Cut-off Date, all of Seller's rights, title and interest in and to the Charged-off Accounts identified in the file delivered by Seller to Purchaser on the Applicable Cut-Off Date.... [and] listed on Exhibit 1 to the Bill of Sale on the Applicable Closing Date.

18. During the term of the July 2004 Contract, Bank One sold to Unifund Partners and Unifund Partners accepted for delivery the Charged-Off Accounts identified in the files delivered by Bank One to Unifund Partners.

19. Upon information and belief, in connection with the July 2004 Contract, Unifund Partners purchased all of the eligible Charged-Off Accounts from Bank One.

*October 2004 Post Tertiary Recall Account Contract*[5]

20. On or about October 26, 2004, Chase Manhattan and Unifund Partners entered into a contract for the sale by Chase Manhattan of Charged-Off Accounts to Unifund Partners ("October 2004 Contract").

21. Section 2(a) of the October 2004 Contract provided: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase, effective as of the Cut-off Date, all of Seller's rights, title and interest in and to the Charged-off Accounts identified in Exhibit 1, attached hereto and made a part hereof."

22. During the term of the October 2004 Contract, Chase Manhattan sold to Unifund Partners and Unifund Partners accepted for delivery the Charged-Off Accounts identified in the files, disks or spreadsheets delivered by Chase Manhattan to Unifund Partners.

---

[5] Post-tertiary recall accounts refer to those accounts that are recalled by the bank from third-party collection agencies after at least three attempts to collect the debt have been made by the agencies.

23.     Upon information and belief, in connection with the October 2004 Contract, Unifund Partners purchased all of the eligible Charged-Off Accounts from Chase Manhattan.

*January 2005 Amendment of the October 2004 Contract*

24.     On or about January 28, 2005, Chase Manhattan and Unifund Partners entered into a contract to amend the October 2004 Contract ("January 2005 Amendment").

25.     Section 2(a) of the January 2005 Amendment provided: "Seller agrees to sell and Purchaser agrees to buy 100% of all eligible post-tertiary recall accounts randomly selected charge-off accounts during the months of January 2005 through December 2005."

26.     During the term of the January 2005 Amendment, Chase Manhattan sold to Unifund Partners and Unifund Partners accepted for delivery the Charged-Off Accounts identified in the files, disks or spreadsheets delivered by Chase Manhattan to Unifund Partners.

27.     Upon information and belief, in connection with the January 2005 Contract, Unifund Partners purchased all of the eligible Charged-Off Accounts from Chase Manhattan.

*November 2005 Early Tertiary Recall Account Contract*[6]

28.     On or about November 22, 2005, Chase and Unifund entered into a contract for the sale of its eligible early tertiary recall Charged-Off Accounts to Unifund ("November 2005 Tertiary Contract").

29.     Section 2(b) of the November 2005 Tertiary Contract provided: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by

---

[6] Tertiary recall accounts refer to those accounts that are recalled by the bank from third-party collection agencies after three collection attempts to collect the debt have been made by the agencies.

multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by $.0523."

30. During the term of the November 2005 Tertiary Contract, Chase sold to Unifund and Unifund accepted for delivery the Charged-Off Accounts identified in the diskettes or spreadsheets delivered by Chase to Unifund.

31. Upon information and belief, in connection with the November 2005 Tertiary Contract, Unifund purchased all of the eligible Charged-Off Accounts from Chase.

*November 2005 Secondary Recall Account Contract[7]*

32. On or about November 29, 2005, Chase and Unifund entered into a contract for the sale by Chase of Charged-Off Accounts to Unifund ("November 2005 Secondary Contract").

33. Section 2(b) of the November 2005 Secondary Contract provided: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by $.071514%."

34. During the course of the November 2005 Secondary Contract, Chase sold to Unifund and Unifund accepted for delivery the Charged-Off Accounts identified in the diskettes or spreadsheets delivered by Chase to Unifund.

35. Upon information and belief, in connection with the November 2005 Secondary Contract, Unifund purchased all of the eligible Charged-Off Accounts from Chase.

---

[7] Secondary Recall Accounts refers to those accounts that are recalled by the bank from third-party collection agencies after two attempts to collect the debt have been made by the agencies.

*January 2006 Tertiary Recall Account Contract*

36.     On or about January 26, 2006, Chase and Unifund entered into a contract for the sale by Chase of Charged-Off Accounts to Unifund. ("2006 Contract")

37.     Section 2(b) of the 2006 Contract provided: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by $.0523.%"

38.     During the course of the 2006 Contract, Chase sold to Unifund and Unifund accepted for delivery the Charged-Off Accounts identified in the diskettes or spreadsheets delivered by Chase to Unifund.

39.     Upon information and belief, in connection with the 2006 Contract, Unifund purchased all of the eligible Charged-Off Accounts from Chase.

*January 2007 Quaternary Account Contract*[8]

40.     On or about January 25, 2007, Chase and Unifund entered into a contract for the sale by Chase of Charged-Off Accounts to Unifund ("January 2007 Contract").

41.     Section 2(b) of the January 2007 Contract provided:  "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by seven percent (7.0%)."

---

[8] Quaternary charge-off accounts refers to those accounts that are recalled by the bank from third-party collection agencies after at least three attempts to collect the debt have been made by the agencies.

42. During the course of the January 2007 Contract, Chase sold to Unifund and Unifund accepted for delivery the Charged-Off Accounts identified in the diskettes or spreadsheets delivered by Chase to Unifund.

43. Upon information and belief, in connection with the January 2007 Contract, Unifund purchased all of the eligible Charged-Off Accounts from Chase.

*April 2007 Quaternary Account Contract*

44. On or about April 1, 2007, Chase and Unifund entered into a contract for the sale by Chase of Charged-Off Accounts to Unifund ("April 2007 Contract").

45. Section 2(b) of the April 2007 Contract provided: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by six and sixty five hundredths percent (6.65%)."

46. During the course of the April 2007 Contract, Chase sold to Unifund and Unifund accepted for delivery the Charged-Off Accounts identified in the diskettes or spreadsheets delivered by Chase to Unifund.

47. Upon information and belief, in connection with the April 2007 Contract, Unifund purchased all of the eligible Charged-Off Accounts from Chase.

**Unifund's Breach of the 2008 Contract**

48. On or about January 1, 2008, Chase and Unifund entered into a contract entitled "Tertiary Recall Forward Flow" for the sale by Chase of eligible quaternary Charged-Off Accounts to Unifund ("2008 Contract").[9]

49. By its terms, the 2008 Contract is governed by the laws of Delaware.

50. Section 2(b) of the 2008 Contract provides: "Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by five and ninety hundredths percent (5.90%)… For any Enhanced Digitized Media Accounts, the Purchase Price for such Enhance Digitized Media Accounts shall be increased by 20 hundredths percent and, as such shall be determined by multiplying the total Unpaid Balances of the Charged-off Enhance Digitized Media Accounts being sold by six and ten hundredths percent (6.10%)."

51. Unifund's Purchase Price was 6.1% under the terms of the 2008 Contract because at all relevant times it purchased Enhanced Digitized Media Accounts.

52. Paragraph 2(c) of the 2008 Contract provides that "Seller, in its sole judgment, and subject to the provisions hereof shall determine which Charge-off Accounts shall be eligible for sale to Purchaser hereunder."

53. Paragraph 4(f) of the 2008 Contract provides that "Seller is a sophisticated Purchaser that is in the business of buying or collecting Accounts of the type being purchased or

---

[9] Tertiary recall accounts refer to those accounts that are recalled by the bank from third-party collection agencies after three attempts to collect the debt have been made by the agencies. The term is synonymous with Quaternary charge-off accounts.

otherwise deals in the collection of consumer debts in the ordinary course of Purchaser's business."

54. Paragraph 20 of the 2008 Contract contains a survival clause that expressly provides that ¶ 2 of the contract, entitled Sale of Accounts, survives termination of the contract, along with paragraphs 3 through 10, 12 through 17, 19, 20, 23, and 25 through 29.

55. The 2008 Contract was expected to generate approximately $108,000,000 in revenue for Chase.

56. In or about March 2008, pricing in the post-secondary market for Charged-Off Accounts declined by as much as 30-50% from the fourth quarter of 2007.

57. In or about March 2008, significant supply of Charged-Off Accounts flooded the market in response to tightened credit and large banking institutions being pressured by shareholders to unload bad debt.  Virtually overnight, an industry that historically favored issuers of charged-off debt, suddenly became a buyer's market.

58. Realizing the market turmoil, Unifund sought to exploit the destabilized environment by attempting to renegotiate the terms of the 2008 Contract.

59. In or about March 2008, Unifund asked that Chase reduce the purchase price set forth in section 2(b) of the 2008 Contract.  Unifund submitted two separate proposals for Chase's consideration - each a departure from Unifund's contractual obligations under the 2008 Contract.

60. Under the first proposal, in place of the 2008 Contract terms Unifund sought to enter into a four-month contract with an option to extend another six months at a reduced purchase price of 4.55%, which represented a significant price reduction from the 2008 Contract Purchase Price of 6.1%.  As compared to the terms of the 2008 Contract, under this proposal

Chase would have lost $9,800,000 in revenue during the first four months and $17,600,000 during the six month extension period.

61. Under the second proposal, Unifund desired to cancel the 2008 Contract and enter into a ten-month contract with Chase at a reduced purchase price of 4.35%. This scenario would have resulted in a $31,000,000 loss for Chase as compared to the terms of the 2008 Contract.

62. On or about March 19, 2008, representatives of Unifund and Chase met in Wilmington, Delaware. At this meeting, Unifund demanded a restructuring of the 2008 Contract pricing terms. According to Unifund, this proposed restructuring was driven by pressure from its investors.

63. At the Wilmington meeting, Chase offered to re-bid the Charged-Off Accounts that Unifund was obligated to purchase under the 2008 Contract. Chase proposed to Unifund that if it could find a replacement buyer for Unifund's share of the Charged-Off Accounts, then Chase would look to Unifund to make up the difference in lost revenue, if any, between the 6.1% Purchase Price required under the 2008 Contract and the price paid by the replacement buyer. However, Unifund rejected this proposal.

64. In addition, Chase offered to put Unifund in touch with Chase's private equity business to facilitate funding, but Unifund did not pursue it.

65. For each of the months of January 2008 and February 2008, Chase tendered to Unifund and Unifund accepted delivery of and purchased from Chase all eligible Charged-Off Accounts pursuant to the terms of the 2008 Contract.

66. However, on or about March 20, 2008, a day after the Wilmington meeting took place, Unifund contacted Chase and proposed to purchase only up to 70% of Chase's eligible quaternary Charged-Off Accounts at a reduced price of 4.75%.

67.     As Unifund was obligated under the 2008 Contract to purchase all eligible Charged-Off Accounts designated by Chase on a monthly basis at the 6.1% price designated in the 2008 Contract, Unifund's proposal was rejected by Chase.

68.     On or about March 27, 2008, Unifund informed Chase that it would meet its obligations under the 2008 Contract for March 2008 and accepted delivery of and purchased from Chase all eligible Charged-Off Accounts pursuant to the terms of the 2008 Contract.

69.     Those contractual obligations required Unifund to purchase each month during 2008 all of the eligible Charged-off Accounts listed on diskettes or on spreadsheets provided by Chase to Unifund.

70.     By email dated April 11, 2008, Henry Thoman, Unifund's Vice President of Acquisitions and Corporate Counsel, stated to a Chase representative, "as indicated in [a] voice mail left for you Wednesday on your office phone and today on your cell, [Unifund would] like to take only 70% of the tertiary file this month [April]." In the prior three months of 2008, Chase had tendered and Unifund had purchased all eligible Charged-off Accounts listed on the diskettes or spreadsheets provided by Chase to Unifund, not merely 70% as proposed by Thoman.

71.     In April 2008, Unifund accepted delivery of and purchased from Chase only 70% of all eligible Charged-off Accounts for April 2008.

72.     Unifund indicated it would resume purchasing 100% of the Charged-Off Accounts in subsequent months.

73.     On or about April 30, 2008, in an effort to mitigate its loss, Chase sold the remaining 30% of the April Charged-Off Accounts for a purchase price of 4.8%, which was less

than the 6.1% Purchase Price Unifund was obligated to pay to Chase under the terms of the 2008 Contract.

74. On or about May 1, 2008, Unifund informed Chase it would be purchasing only 70% of the Charged-Off Accounts for the rest of 2008, notwithstanding its contractual obligation to purchase each month during 2008 all of the eligible Charged-off Accounts listed either on diskettes or spreadsheets provided by Chase to Unifund.

75. In fact, Unifund purchased only 70% of the Charged-Off Accounts tendered by Chase for May 2008 and June 2008.

76. On or about July 10, 2008, Unifund informed Chase that it had no intention of purchasing the July Charged-Off Accounts at the agreed Purchase Price of 6.1%.

77. Instead of fulfilling its obligations under the 2008 Contract, on or about July 14, 2008 Unifund offered to purchase the Charged-Off Accounts from Chase at a purchase price of 4.3%, rather than the 6.1% required under the 2008 Contract terms. As an enticement if Chase accepted Unifund's unilateral Purchase Price reduction, Unifund offered Chase 20% of the net revenue of sales and/or collections if Unifund was able to collect and/or sell at least 8.6% of the Charged-Off Accounts purchased from Chase. According to Unifund, Chase's receipt of the aforementioned 20% of the net revenue would cease after Chase received total payments equal to 6.1% of the face value of the Charged-Off Accounts.

78. Chase informed Unifund that it expected Unifund to honor the pricing terms set forth in the 2008 Contract.

79. By email dated July 25, 2008, Unifund informed Chase it was not purchasing any Charged-Off Accounts for the July 2008 billing cycle.

80.     By letter dated July 29, 2008, Chase declared Unifund in breach of the 2008 Contract.

81.     By letter dated August 4, 2008, Chase cancelled the 2008 Contract pursuant to section 21, which provides: "Seller may cancel this Contract upon five (5) days prior written notice to Purchaser if (i) Purchaser fails or refuses to purchase any Charged-off Accounts offered for sale hereunder to Purchaser by Seller… or (v) Purchaser breaches any other term or condition herein and fails to cure such breach with[in] five (5) days of receipt of Chase's notice of such breach."  In the letter, Chase reserved its right to seek damages due to Unifund's failure to purchase the Charged-Off Accounts.

82.     In an effort to mitigate its damages following Unifund's unilateral failure to honor its contractual obligations, Chase entered into contracts with two other companies to sell the Charged-Off Accounts.  However, Chase was unable to sell the Charged-Off Accounts at the Purchase Price set forth in the 2008 Contract, which resulted in Chase selling the Charged-Off Accounts for less than what it would have sold them to Unifund under the terms of the 2008 Contract.

83.     As a result of the foregoing, Chase incurred damages of no less than $11,024,872.37.

84.     On or about January 1, 2008 and again on June 6, 2008, Chase and Unifund entered into contracts for the sale by Chase of eligible Tertiary Business Card Charged-off Accounts to Unifund, which contracts covered the months of January 2008 through December 2008.  At no time in 2008 did Unifund attempt to unilaterally change the terms of those contracts or inform Chase that it was not purchasing any Charged-Off Business Accounts.

## AS AND FOR A FIRST CLAIM
### (Breach of Contract)

85. Chase repeats and realleges the allegations in the prior paragraphs.

86. Chase entered into the 2008 Contract with Unifund, pursuant to which Unifund agreed to purchase all of Chase's "rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price . . . [f]or . . . Enhanced Digitized Media Accounts [of] six and ten hundredths percent (6.10%)."

87. Chase fully complied with the terms of the 2008 Contract.

88. Unifund breached the 2008 Contract by failing to fulfill its purchase obligations with respect to the Charged-Off Accounts.

89. As a result of the foregoing, Chase has been damaged in an amount to be determined at trial, but in no event totaling less than $11,024,872.37, plus interest, reasonable attorney's fees and the cost and expenses of the litigation as provided for in the 2008 Contract.

## AS AND FOR A SECOND CLAIM
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

90. Chase repeats and realleges the allegations in the prior paragraphs.

91. The 2008 Contract contains an implied covenant of good faith and fair dealing requiring Unifund to honor the spirit of the "forward-flow" agreement between Chase and Unifund.

92. Unifund admits in paragraph 4(f) of the 2008 Contract that it is a sophisticated buyer in the business of buying or collecting charged-off accounts or that it otherwise deals in the collection of consumer debts in the ordinary course of its business. As a sophisticated buyer of charged-off accounts, Unifund knew that the 2008 Contract was a forward-flow agreement

that allowed Chase to hedge against price and other risk because the terms of the contract committed Unifund to buying each monthly tranche of charged-off accounts tendered by Chase to Unifund.

93.     Unifund had made the same commitment in each of the forward-flow agreements entered into between Chase and Unifund and understood from the long course of conduct between the parties and from the terms of the 2008 Contract that Chase relied upon Unifund to act in good faith and to deal fairly in accordance with the forward-flow agreement between them.

94.     By applying oppressive tactics and attempting to unilaterally modify the terms of the 2008 Contract, and then by refusing to comply with its obligation to purchase the charged-off accounts tendered by Chase in 2008, Unifund denied Chase the fruits of the parties' bargain and denied Chase the price protection and other benefits afforded to Chase under a forward-flow agreement.

95.     In so doing, Unifund breached the implied covenant of good faith and fair dealing in the 2008 Contract.

96.     As a result of the foregoing, Chase has been damaged in an amount to be determined at trial, but in no event totaling less than $11,024,872.37, plus interest, reasonable attorney's fees and costs.

## AS AND FOR A THIRD CLAIM
### (Bad Faith)

97.     Chase repeats and realleges the allegations in the prior paragraphs.

98.     Chase entered into the 2008 Contract with Unifund, pursuant to which Unifund agreed to purchase all of Chase's "rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on diskette or a spreadsheet to be provided to

Purchaser) at a Purchase Price . . . [f]or . . . Enhanced Digitized Media Accounts [of] six and ten hundredths percent (6.10%)."

99. Chase fully complied with the terms of the 2008 Contract.

100. Unifund acted in bad faith by failing to make reasonable efforts to meets its obligations under the 2008 Contract.

101. As a result of the foregoing, Chase has been damaged in an amount to be determined at trial.

**WHEREFORE**, Chase requests judgment as follows:

(a) Awarding Chase damages in an amount to be determined at trial, but not less than $11,024,872.37, plus interest;

(b) Awarding Chase its costs and disbursements in this action, including reasonable attorney's fees and costs; and

(c) Awarding Chase such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       March 8, 2010

                                          Yours, etc.,

                                          Stagg, Terenzi, Confusione & Wabnik, LLP

                              By:    <u>s/ Thomas E. Stagg</u>_____
                                          Thomas E. Stagg (ts-0663)

                                          Attorneys for Plaintiff Chase Bank USA, N.A.
                                          401 Franklin Avenue, Suite 300
                                          Garden City, New York 11530
                                          (516) 812-4500