**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------

CHASE BANK USA, N.A.,

                              Plaintiff,                  Case No. 1:09-cv-09795 RWS

      -against-

UNIFUND PORTFOLIO A LLC,

                              Defendant.
-----------------------------------------------------------------------

**PLAINTIFF CHASE BANK USA, N.A.'S**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT UNIFUND PORTFOLIO A LLC'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**STAGG, TERENZI, CONFUSIONE**
**& WABNIK, LLP**
Thomas E. Stagg, Esq.
Haley E. Olam, Esq.
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4500
(516) 812-4600 Fax

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

PRELIMINARY AND FACTUAL STATEMENT.................................................1

SUMMARY OF ARGUMENTS.............................................................................3

ARGUMENT............................................................................................................6

   I.     UNIFUND HAS NOT MET THE RULE 12(b)(6) DISMISSAL STANDARD..........6

   II.    CHASE SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF THE
        2008 FORWARD FLOW AGREEMENT....................................................8

        A.   The 2008 Agreement Required Unifund To Purchase All Eligible
             Charged-off Accounts Offered By Chase...............................................9

        B.   Unifund's Motion To Dismiss Should Be Denied To The Extent
             That The 2008 Agreement Is Ambiguous...............................................12

        C.   Chase's Original Complaint Is Immaterial.............................................13

   III.   CHASE SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF THE
        IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING....................15

   IV.   CHASE SUFFICIENTLY ALLEGES A CLAIM FOR BAD FAITH.................18

   V.    THE LIMITATION OF LIABILITY PROVISION DOES NOT BAR
        RECOVERY..............................................................................................19

        A.   Chase's Damages Are Not Barred By The
             Limitation Of Liability Provision.......................................................20

        B.   The Limitation Of Liability Provision Is Unenforceable...........................23

        C.   The Action Should Not Be Dismissed At The Pleadings Stage
             Based On The Limitation Of Liability Provision...................................24

CONCLUSION.......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

Barberan v. Nationpoint,
    No. 07-CV-11595, 2010 WL 1529324 (S.D.N.Y. Mar. 22, 2010) ........................................... 7

Bolt Elec., Inc. v. City of New York,
    53 F.3d 465 (2d Cir. 1995) .................................................................................................... 7

Doral Produce Corp. v. Paul Steinberg Assoc., Inc.,
    347 F.3d 36 (2d Cir. 2003)................................................................................................... 13

G.R.J.H., Inc. v. Oxford Health Plans, Inc.,
    No. 07-CV-00068 (NAM/RFT), 2009 WL 1362985 (N.D.N.Y.  May 14, 2009) .................... 14

Faulkner v. Beer,
    463 F.3d 130 (2d Cir. 2006) .................................................................................................. 7

Harris v. City of N.Y.,
    186 F.3d 243 (2d Cir. 1999)................................................................................................. 13

In re Crysen/Montenay Energy Co.,
    226 F.3d 160 (2d Cir. 2000)................................................................................................. 13

In re Perry,
    423 B.R. 215 (Bankr. S.D. Tex. 2010) ................................................................................. 21

Lucente v. Int'l Bus. Mach. Corp.,
    310 F.3d 243 (2d Cir. 2002)................................................................................................. 13

Millgard Corp. v. E.E. Cruz Nab Fronier-Kemper,
    No. 99 Civ. 2952 (LBS), 2003 WL 22741664 (S.D.N.Y. Nov. 18, 2003) ............................. 22

Mon River Towing, Inc. v. Salvage Co.,
    Civ. No. 06-1499, 2010 WL 1337693 (W.D.P.A. Mar. 31, 2010) .......................................... 21

Ricciuti v. New York City Transit Auth.,
    941 F.2d 119 (2d Cir. 1991).................................................................................................. 7

Ronzani v. Sonafi,
    899 F.2d 195 (2d Cir. 1990)................................................................................................. 14

Tabor v. Bodisen Biotech, Inc.,
    579 F. Supp. 2d 438 (S.D.N.Y. 2008) ................................................................................. 14

Walker v. City of New York,
     974 F.2d 293 (2d Cir. 1992)...................................................................... 7

**STATE CASES**

Appliance Giant Inc. v. Columbia 90 Assoc., LLC,
     8 A.D.3d 932, 779 N.Y.S. 2d 611 (3d Dep't 2004) ............................... 21

Ariba, Inc. v. Electronic Data Sys. Corp.,
     No. Civ.A. 02C-06-083 JRJ, 2003 WL 943249 (Del. Super. Ct. Mar. 7, 2003) ..................... 17

BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.,
     No. C.A. 3099-VCN, 2009 WL 264088 (Del. Ch. Feb. 3, 2009) ............................. 15

Bell Atl. Meridian Sys. v. Octel Commc'ns Corp.,
     No. Civ.A. 14348, 1995 WL 707916 (Del. Ch. Nov. 28, 1995)................................ 13

Chamison v. HealthTrust, Inc. Hosp. Co.,
     735 A.2d 912 (Del. Ch. 1999)......................................................... 15

Comrie v. Enterasys Networks, Inc.,
     837 A.2d 1 (Del. Ch. 2003)............................................................. 20

Concord Mall, LLC v. Best Buy Stores, L.P.,
     No. Civ.A. 02C-09-267 PLA, 2004 WL 1588248 (Del. Super. Ct. July 12, 2004)................. 12

Cypress Assocs., LLC v. Sunnyside Cogeneration Assocs. Project,
     No. Civ.A. 1607-N, 2007 WL 148754 (Del. Ch. Jan. 17, 2007) ............................. 12

Duncan v. Theratx, Inc.,
     775 A.2d 1019 (Del. 2001) ............................................................. 20

Dunlap v. State Farm Fire and Gas. Co.,
     878 A.2d 434 (Del. 2005) ............................................................. 16

E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.,
     498 A.2d 1108 (Del. 1985) ............................................................. 11

Everest Properties II, L.L.C. v. American Tax Credit Prop. II, L.P.,
     No. 99C-08-122-WTQ, 2000 WL 145757 (Del. Super. Ct. Jan. 7, 2000)......................... 18

Hampton v. Warren-Wolf Assoc., Inc.,
     No. 02C-10-037WLW, 2004 WL 838847 (Del. Super. Ct. Mar. 19, 2004)........................ 25

Int'l Fid. Ins. Co. v. Delmarva Sys. Corp.,
     No. 99C-10-065 WCC, 2001 WL 541469 (Del. Super. Ct. May 9, 2001) ....................... 18

J.A. Jones Constr. Co. v. City of Dover,
  372 A.2d 540 (Del. Super. Ct. 1977) .......................................................................... 23

J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.,
  1988 WL 32012 (Del. Super. Ct. Mar. 30, 1988) ...................................................... 21

Julian v. E. States Const. Serv., Inc.,
  Civ. No. 1892-VCP, 2008 WL 2673300  (Del. Ch. July 8, 2008) ............................ 10

Julian v. Julian,
  Civ. No. 1892-VCP, 2010 WL 1068192 (Del. Ch. Mar. 22, 2010) .......................... 13

Land-Lock, LLC v. Paradise Prop., LLC,
  No. 384-2008, 2008 WL 5344062 (Del. Super. Ct. Dec. 23, 2008) ........................... 9

Lorillard Tobacco Co. v. American Legacy Found.,
  903 A.2d 728 (Del. Super. Ct. 2006) ............................................................................ 9

M & G Polymers USA, LLC v. Carestream Health, Inc.,
  C.A. Bo. 07C-11-242 PLA, 2009 WL 3535465 (Del. Super. Ct. June 3, 2009) ...... 24

Mell v. New Castle County,
  No. Civ.A. 03M-06-030 JRS, 2004 WL 1790140 (Del. Super. Ct. Aug. 4, 2004).... 8

Miga v. Jensen,
  96 S.W. 3d 207 (Tex. 2002).......................................................................................... 22

Penn Mut. Life Ins. Co. v. T. Oglesby, II, M.D.,
  695 A.2d 1146 (Del. 1997) ........................................................................................... 23

Seidensticker v. Gasparilla Inn, Inc.,
  Civ. No. 2555-CC, 2007 WL 1930428  (Del. Ch. June 19, 2007)............................. 12

Seidensticker v. Gasparilla Inn, Inc.,
  Civ. No. 2555-CC, 2007 WL 4054473 (Del. Ch. Nov. 8, 2007)............................... 22

Sonitrol Holding Co. v. Marceau Investissements,
  607 A.2d 1177 (Del. 1992) ............................................................................................. 9

Strassburger v. Earley,
  752 A.2d 557 (Del. Ch. 2000).................................................................................... 21

Superior Vision Servs, Inc. v. Relia-Star Life Ins. Co.,
  No. Civ.A. 1668-N, 2006 WL 2521426 (Del. Chancery Aug. 25, 2006)................. 17

Supermex Trading Co. v. Strategic Solutions Group, Inc.,
   No. Civ. A. 16183, 1998 WL 229530 (Del. Ch. May 1, 1998) ................................................. 23

Twin Bridges Ltd. P'Ship v. Draper,
   No. Civ.A. 2351-VCP, 2007 WL 2744609 (Del. Ch. Sept. 14, 2007) .................................... 17

Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.,
   691 A.2d 609 (Del. 1996). ..................................................................................................... 12

**STATUTES AND RULES**

   Fed. R. Civ. P. 15(c) ............................................................................................................. 13

   6 Del C. §2-301 ...................................................................................................................... 23

   6 Del C. §2-719(2) ................................................................................................................. 23

**OTHER AUTHORITIES**

   Glen Crawford, *Single Sale or Forward Flow?*, Credit Management, Apr. 1, 2004 ................ 1

   Richard Gugliada, *Structured Finance Ratings Asset-Backed Securities New Assets 1998*,
   781 P.L.I. 511, 620 (1998) ...................................................................................................... 1

Plaintiff, Chase Bank USA, N.A. ("Chase"), by and through its attorneys, Stagg, Terenzi, Confusione & Wabnik, LLP, respectfully submits this Memorandum of Law in opposition to defendant Unifund Portfolio A LLC's ("Unifund") motion to dismiss the First Amended Complaint.

## PRELIMINARY AND FACTUAL STATEMENT

At issue in this case is a "forward flow" agreement entered into between Chase and Unifund. As set forth in footnote 1 of the Amended Complaint, a forward flow agreement for credit card debt typically allows a seller to transact a series of sales of unidentified portfolios throughout a pre-determined future term. The contract generally defines the characteristics of the receivables to be sold and the seller commits to selling receivables with those characteristics to the buyer periodically during the term of the agreement. The buyer is committed to buying each monthly tranche, provided the individual debts comply with the terms of the contract.[1]

Forward flow contracts are generally attractive to buyers such as Unifund because they provide a reliable supply of a company's debt pool and are attractive to sellers such as Chase because they provide a reliable way to remove debt from their books. (Am. Compl. ¶ 6.) The pool of charged-off debt sold in a forward flow contract sells at a steep discount to its face value, usually for cents on the dollar because the accounts are charged-off. (Am. Compl. ¶ 7.)

In this case, Chase and Unifund entered into a Tertiary Recall Forward Flow Credit Card Account Purchase Agreement (the "2008 Agreement" or "Agreement"). There can be no doubt that Unifund knew the Agreement was a forward flow arrangement since the title identified it as

---

[1] See Glen Crawford, *Single Sale or Forward Flow?*, Credit Management, Apr. 1, 2004, at ¶¶ 2-4; Richard Gugliada, *Structured Finance Ratings Asset-Backed Securities New Assets 1998*, 781 P.L.I. 511, 620 (1998); Bloomberg Financial Glossary, which defines "Forward Sale" as "[a] method for hedging price risk that involves an agreement between a lender and an investor to sell particular kinds of loans at a specified price and future time" *available at* http://www.bloomberg.com/invest/glossary/bfglosf.htm.

such, and the Agreement was similar to prior contracts between Chase and Unifund.[2]

Pursuant to the Agreement, Chase agreed to sell and Unifund agreed to buy "yet to be identified" charged-off consumer credit card accounts ("charged-off accounts") for approximately six cents on the dollar from January 2008 through December 2008. (Am. Compl. ¶ 84.)[3]  In exchange for Chase's guarantee of a reliable supply of its consumer credit card debt pool, Unifund promised to buy *each* monthly tranche of all charged-off accounts that Chase offered, provided the charged-off accounts were not deemed "ineligible" as defined in the 2008 Agreement. (Am. Compl. ¶¶ 9-10.)

Prior to the 2008 Agreement, Chase and Unifund had entered into many other forward flow agreements for the sale of charged-off credit card accounts. (Am. Compl. ¶¶ 12-47.) These contracts were customarily twelve months in duration, at a set price, with eligible charged-off accounts presented by Chase to Unifund on a monthly basis. (Am. Compl. ¶ 9.)

Unifund satisfied its monthly purchase obligations under the 2008 Agreement from January through June. (Am. Compl. ¶ 79.) In July 2008 Unifund abruptly informed Chase that it was not purchasing any charged-off accounts for that month's billing cycle. (Id.) Because the 2008 Agreement required Unifund to purchase *each* monthly tranche of charged-off accounts offered by Chase through December 2008, Unifund's refusal to purchase charged-off accounts constituted a breach of the 2008 Agreement. In response to Unifund's breach, Chase cancelled the 2008 Agreement in order to sell the accounts to other buyers and recoup a portion of its damages. (Powers Aff. Ex. A § 21.) After mitigation, Chase's damages total approximately

---

[2] The cover page of the Agreement reads "CREDIT CARD PURCHASE AGREEMENT between Chase Bank USA, N.A. and Unifund Portfolio A LLC, dated as of January 1, 2008, Tertiary Recall Forward Flow January, 2008 Through December 2008." (Powers Aff. Ex. A.)

[3] The charged-off accounts sold refer to accounts that were recalled by Chase from third-party collection agencies after each of the three agencies had attempted to collect the debt.

$11,024,872.

Unable to resolve their respective differences, Chase commenced this action in November 2009 and filed its Amended Complaint in March 2010. Unifund now moves to dismiss Chase's Amended Complaint.

## SUMMARY OF ARGUMENTS

In its motion, Unifund contends that the 2008 Agreement gave Unifund discretion as to which accounts to purchase, or whether to purchase any accounts at all. (Def.'s Mem. Supp. Dismiss Compl. 3.) Unifund cites to sections 2(e) and 2(f) of the 2008 Agreement to demonstrate that it was up to Unifund to decide whether to purchase accounts. (Id.)

However, Unifund's interpretation of the 2008 Agreement is not supported by the plain language of the contract and completely ignores the obligations inherent in a forward flow arrangement. It also disregards the history, practice and arrangements between the parties over the prior course of six years. Unifund's reading of the 2008 Agreement would render its obligations discretionary, and thereby illusory. Adopting Unifund's position would defeat the essential purpose of the forward flow agreement entered into by the parties, notwithstanding that the 2008 Agreement met all the characteristics of a forward flow arrangement:

(1) Chase and Unifund agreed to transact a series of sales of as yet unidentified portfolios (charged-off accounts) throughout a pre-determined future term (2008);

(2) Contract generally defined the characteristics of the receivables to be sold (tertiary accounts) and Chase committed to sell receivables with those characteristics to Unifund periodically (monthly) during the term of the agreement;

(3) Unifund committed to buy each monthly tranche, provided the individual debts complied with the terms of the contract ("eligible" accounts that could be collected);

(4) The 2008 Agreement was attractive to Unifund because it provided a reliable supply of Chase's credit card debt pool and was attractive to Chase because it provided a reliable way to remove debt from its books; and

3

    (5)  The pool of charged-off debt sold in the 2008 Agreement sold at a steep discount to its face value (six cents on the dollar).

Under the 2008 Agreement, Unifund was given discretion to decline to purchase charged-off accounts, but that discretion was strictly limited to "Ineligible Accounts," which are expressly defined in the contract. Unifund could refuse to purchase only those accounts in which the: (i) cardholder filed or became subject to bankruptcy proceedings; (ii) cardholder asserted the account or any transaction on the account was fraudulently originated; (iii) statute of limitation elapsed; (iv) cardholder died; (v) account was subject to litigation or class action; or (vi) account was settled. (Powers Aff. Ex. A § 1.) Thus, unless one of these conditions was met (i.e., a cardholder died or was adjudicated bankrupt), Unifund had absolutely no discretion to refuse to purchase charged-off accounts offered by Chase under the 2008 Agreement.[4]

Tellingly, Unifund does not point to any provision in the 2008 Agreement that permitted it to refuse to purchase an "eligible" charged-off account. Indeed, Section 2(b) expressly provides that "Subject to the terms and conditions of this Agreement, on the Closing Date, Seller will sell, assign and transfer to Purchaser and ***Purchaser shall purchase*** all of Seller's rights, title and interest in and to ***eligible Charged-off Accounts*** (which Accounts shall be listed either on a diskette or a spreadsheet to be provided to Purchaser) . . . ." (Id. at § 2(b) (emphasis added).) With respect to the "subject to" language contained in Section 2(b), there are no other terms or conditions in the Agreement that permitted the refusal to purchase *eligible* charged-off accounts.

Unifund fails to mention that only Chase could exercise discretion under the 2008 Agreement in determining which charged-off accounts to offer for sale to Unifund. Section 2(c) of the 2008 Agreement provides that "Seller, in its sole judgment, and subject to the provisions hereof shall determine which Charged-off Accounts shall be eligible for sale to Purchaser

---

[4] Because Unifund sought to collect the funds owed on charged-off accounts, it made sense for the parties to agree that Unifund be allowed to decline to purchase accounts that were essentially uncollectible.

hereunder."[5]  (Id. at § 2(c)).  Notably, there is no equivalent provision permitting Unifund to determine which accounts it would purchase from Chase.

Alternatively, Unifund argues that it was required to purchase only 70% of the charged-off accounts offered by Chase.  (Def.'s Mem. Supp. Dismiss Compl. 9-11.)  Unifund again ignores the plain language of the 2008 Agreement, which in no way limits the purchase obligation to 70% of the charged-off accounts.  Section 2(b) of the 2008 Agreement expressly provides that Unifund was obligated to purchase all of Chase's rights, title and interest in and to *eligible* charged-off accounts that Chase listed either on a diskette or a spreadsheet provided to Unifund.  (Powers Aff. Ex. A § 2(b); Am. Compl. ¶ 11.)  Moreover, as noted in footnote 5 below, the 70% language derives from the Whereas clause provisions of the 2008 Agreement, which specified a desire by the parties to sell and to purchase "no less than" 70% of the eligible charged-off accounts.  Plainly, the "no less than" language does not limit the sales volume to 70%, but of course contemplates that, at a minimum, 70% shall be sold.  Thus, while Chase was authorized to, and usually did, select 100% of the charged-off accounts for inclusion in the monthly tranche offered to Unifund, it was agreed by the parties that Chase would not sell "less than" 70% of the eligible charged-off accounts.

Chase relied upon Unifund to act in good faith and to deal fairly in accordance with the terms of the 2008 Agreement, as it did in six years of prior dealings.  However, after making several attempts to rewrite the pricing terms of the Agreement beginning in March 2008, Unifund unilaterally abandoned its obligation to purchase the charged-off accounts offered by

---

[5] The parties' discretion was limited to the extent that the "Whereas" clauses in the 2008 Agreement provide:
> WHEREAS, Seller desires to sell *no less than 70%* of all eligible Quaternary Charge-off accounts randomly selected charged-off accounts to Purchaser, which accounts shall be delivered by seller during the months of January, 2008, through December 2008.
> WHEREAS, Purchaser desires to purchase such charged-off accounts, all on the terms and conditions hereinafter set forth.
(Powers Aff. Ex. A, 1.)

Chase in July 2008, thereby denying Chase the benefit of the parties' bargain and causing Chase to incur damages of approximately $11,024,872.

Unifund attempts to escape the consequences of its breach by arguing that the limitation of liability provision in the 2008 Agreement bars Chase from recovering damages for "lost profits." (Def.'s Mem. Supp. Dismiss Compl. 5 n.3, 14.)  However, the limitation of liability clause does limit the recovery of compensatory and expectation damages, which is the relief sought by Chase. (Powers Aff. Ex. A § 29.)  Indeed, the parties' specific limitation of Unifund's ability to recover damages against Chase in Section 21(b) of the Agreement and the omission of a reciprocal limitation on Chase, demonstrates that the parties intended for Chase to be permitted to pursue damages against Unifund.  Moreover, the limitation of liability clause is unenforceable since it fails its essential purpose for two reasons: (i) Unifund failed to make any reasonable effort to comply with the terms of the 2008 Agreement; and (ii) the clause fails to expressly contemplate Unifund's failure to purchase charged-off accounts.

There is no dispute that under the relevant terms of the Agreement, especially Section 2(b), Unifund had no discretion regarding the purchase of "eligible" charged-off accounts. Unifund only had discretion regarding "Ineligible Accounts."  By reneging on the obligations set forth in the plain language of the 2008 Agreement, Unifund breached the contract and caused Chase to incur damages.  As such, Unifund's motion to dismiss should be denied.

## A R G U M E N T

### POINT I

### UNIFUND HAS NOT MET THE
### RULE 12(b)(6) DISMISSAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the Amended Complaint and draw all reasonable inferences in Chase's favor.

Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992), cert. denied, 507 U.S. 961, 961 (1993); Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Walker, 974 F.2d at 298 (quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)).

Because Unifund had no discretion to refuse to purchase "eligible" charged-off accounts under Section 2(b) of the 2008 Agreement, and that doing so was a breach of the contract, Chase has clearly established that it is entitled to relief. As such, dismissing Chase's claims would be improper.

In an apparent act of desperation, Unifund submits for the Court's consideration correspondence between the parties, including a July 25, 2008 letter from Unifund to Chase. (Powers Aff. Ex. B.) While documents that are integral to a complaint may be considered on a Rule 12(b)(6) motion, "[i]t must [] be clear that there exist no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

Chase objects on relevance grounds to the consideration of the July 25, 2008 correspondence at this juncture of the case since the author of the letter blatantly misrepresents the plain terms of Section 2(b) of the 2008 Agreement.[6] Unifund implies in the letter that it has discretion under the Agreement to decline to purchase eligible charged-off accounts, when, as described above, Unifund has no such discretion or authority. This self-serving document demonstrates Unifund's lack of credibility, especially since upon information and belief, in the

---

[6] Chase also objects to the July 25, 2008 letter on authenticity grounds since the Amended Complaint refers to a July 25, 2008 "email," not a letter (Am. Compl. ¶ 11.), which requires further inquiry during discovery. See Barberan v. Nationpoint, No. 07-CV-11595, 2010 WL 1529324, at *5 (S.D.N.Y. Mar. 2, 2010) ("Court will not consider those documents submitted by Defendants that are not subject to judicial notice because there are disputes, even if of questionable viability, regarding the authenticity of these documents").

six years that Unifund bought charged-off accounts from Chase pursuant to contracts that were virtually identical to the 2008 Agreement, Unifund never declined to purchase eligible accounts. Chase is entitled to conduct discovery to demonstrate that Unifund opted in bad faith to breach the Agreement because, after the market dropped precipitously, Unifund did not want to pay Chase the contractually agreed price for the accounts. Indeed, at the appropriate time following discovery, Chase intends to utilize this letter as part of its prima facie case to prove that Unifund breached the Agreement and acted in bad faith.

## POINT II

### CHASE SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF THE 2008 FORWARD FLOW AGREEMENT

The main objective when interpreting a contract is to fulfill the reasonably shared expectations of both parties at the time they contracted. Mell v. New Castle County, No. Civ.A. 03M-06-030 JRS, 2004 WL 1790140, at *3 (Del. Super. Ct. Aug. 4, 2004); Matria Healthcare, Inc., v. Coral SR LLC, C.A. No. 2513-N, 2007 WL 763303, at *1 (Del. Ch. Mar. 1, 2007) ("[i]n construing contracts, the function of the Court is to ascertain the shared intentions of the contracting parties when they entered into their agreement").

Here, Chase agreed to sell yet to be identified charged-off accounts to Unifund for a fixed price from January 2008 through December 2008. (Am. Compl. ¶ 84.) In exchange for Chase's guarantee of a reliable supply of its consumer credit card debt pool, Unifund promised to buy *each* monthly tranche of all eligible charged-off accounts Chase offered. (Am. Compl. ¶¶ 9-10.) However, in late July 2008, Unifund informed Chase it was not purchasing any charged-off accounts for the July 2008 billing cycle. (Am. Compl. ¶ 79.) Because the 2008 Agreement required Unifund to purchase *each* monthly tranche of charged-off accounts offered by Chase,

Unifund's refusal to purchase the July 2008 Agreement constituted a breach of the 2008 Agreement.

It is not by accident that Unifund fails to mention in its motion that the Agreement with Chase was a forward flow agreement, which is a specific type of contract with inherent obligations for both Chase and Unifund. The reason for this omission is obvious -- had Unifund mentioned its forward flow arrangement with Chase, it would have acknowledged Unifund's obligation to purchase in monthly tranches all eligible charged-off accounts offered by Chase.

**A.    The 2008 Agreement Required Unifund To Purchase
All Eligible Charged-off Accounts Offered By Chase**

Under Delaware law, contracts are read to avoid rendering any provision illusory or meaningless. Sonitrol Holding Co. v. Marceau Investissements, 607 A.2d 1177, 1183 (Del. 1992). To avoid such an outcome, priority must be given to the intention of the contracting parties. Land-Lock, LLC v. Paradise Prop., LLC, No. 384-2008, 2008 WL 5344062, at *3 (Del. Super. Ct. Dec. 23, 2008). By looking to the four corners of the contract, a court may determine the intent of the parties by the express language of the contract. Id. In analyzing the express language, the court will interpret the terms according to their ordinary and usual meaning. Lorillard Tobacco Co. v. American Legacy Found., 903 A.2d 728, 739 (Del. Super. Ct. 2006).

In its motion to dismiss, Unifund argues the 2008 Agreement did not obligate Unifund to purchase Chase's charged-off accounts. (Def.'s Mem. Supp. Dismiss Compl. 2, 4, 6-9.) According to Unifund, it could decline to purchase the charged-off accounts offered by Chase and Chase's only remedy was merely to cancel the 2008 Agreement. (Id.) Under Unifund's interpretation, it had no contractual obligations at all and could opt to not purchase anything without any liability attaching. In other words, Unifund could essentially do anything it wanted

without any contractual recourse, thus rendering the 2008 Agreement meaningless and its terms illusory.

Since a court should avoid interpreting a contract to render the obligations of the parties illusory, the Court should look to the relevant portions of the 2008 Agreement to reconcile the meaning of the contract. Julian v. E. States Const. Serv., Inc., Civ. No. 1892-VCP, 2008 WL 2673300, at *7 (Del. Ch. July 8, 2008). Section 2(b) provides that:

> Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off accounts (which Charged-off accounts shall be listed either on a diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off accounts as of the File Creation Date being sold by five and ninety hundredths percent (5.90%).

(Powers Aff. Ex. A § 2(b).)

Section 2(b) clearly sets forth obligations for Chase to sell and for Unifund to purchase all of Chase's "rights, title and interest in and to eligible Charged-off accounts." (Id.) Contrary to Unifund's suggested interpretation, the parties intended that there would be reciprocal obligations under the 2008 Agreement and that neither party could deprive the other of the benefit of the bargain.

Unifund refers to provisions in the 2008 Agreement that purportedly afforded Unifund the option to decline to purchase the charged-off accounts. (Def.'s Mem. Supp. Dismiss Compl. 3-4, 7-8.) However, a review of these sections (2(f) and 2(e)), clearly reflect that they did not give Unifund the right to decline to purchase "eligible" accounts, as required by the plain language in Section 2(b). These sections complement Section 2(b); they do not conflict with it, as Unifund seems to suggest.

Furthermore, any possible inference in Sections 2(f) and 2(e) that Unifund could opt to decline eligible charged-off accounts "cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." Land-Lock, 2008 WL 5344062, at *3 (quoting E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co., 498 A.2d 1108, 1114 (Del. 1985)).  Under Delaware law, courts must seek to "harmonize the entire agreement and remain consistent with the object intent of the parties that drafted the contract." Id.

It is disingenuous, at best, for Unifund to conveniently argue now that it was not under an obligation to purchase eligible charged-off accounts.  Unifund's current position is completely contrary to the concept and purpose of a forward flow agreement.  There is obviously no dispute that the parties here voluntarily entered into a forward flow arrangement, as they had on many prior occasions, which is a unique type of contract with special characteristics.  The 2008 Agreement met all of the characteristics of a forward flow contract: it bound Chase and Unifund to transact a series of sales of unidentified charged-off accounts during 2008, which represented the pre-determined term of the contract; and it defined the characteristics of the receivables to be sold as tertiary charged-off accounts and Chase committed to selling receivables with those characteristics to Unifund on a monthly basis during the term of the agreement.  In turn, Unifund committed to buying each monthly tranche, provided the individual debts were not "Ineligible Accounts" that could not be collected upon.  The 2008 Agreement provided a reliable supply of Chase's credit card debt pool to Unifund and provided a reliable way for Chase to remove debt from its books at a known price.  It would render meaningless the very purpose of a forward flow contract if Unifund is permitted to now claim, for the first time in its six-year relationship with Chase, that it had the option to decline to buy eligible charged-off accounts.

**B.**  **Unifund's Motion To Dismiss Should Be Denied**
 **To The Extent That The 2008 Agreement Is Ambiguous**

Chase maintains that the 2008 Agreement contained an unequivocal obligation for Unifund to purchase the charged-off accounts offered for sale by Chase. However, to the extent that the terms of the 2008 Agreement are in anyway deemed ambiguous with respect to Unifund's obligations, the Court will have to look to evidence outside the contract to discern the true meaning of the contract. As such, it would be premature to dismiss the action.

Under Delaware law, if the terms of a contract are reasonably susceptible to different interpretations or may have two or more different meanings, the contract is ambiguous. Seidensticker v. Gasparilla Inn, Inc., Civ. No. 2555-CC, 2007 WL 1930428, at *3 (Del. Ch. June 19, 2007); Concord Mall, LLC v. Best Buy Stores, L.P., No. Civ.A. 02C-09-267 PLA, 2004 WL 1588248, at *3 (Del. Super. Ct. July 12, 2004). If a contract is deemed ambiguous, it is "improper to grant a motion for judgment on the pleadings because to do so would resolve the ambiguity on an incomplete record not shaped by discovery." Cypress Assocs., LLC v. Sunnyside Cogeneration Assocs. Project, No. Civ.A. 1607-N, 2007 WL 148754, at *3 (Del. Ch. Jan. 17, 2007). Moreover, on a motion to dismiss for failure to state a claim, a court may not choose between two differing reasonable interpretations of an ambiguous contract unless only one reasonable construction exists as a matter of law. Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc., 691 A.2d 609, 613 (Del. 1996).

Chase contends Unifund was required to purchase all of the charged-off accounts offered by Chase pursuant to Section 2(b) of the 2008 Agreement. (Am. Compl. ¶¶ 11, 67, 69.) However, Unifund argues that several sections of the 2008 Agreement afforded Unifund the option to decline to purchase charged-off accounts offered by Chase. (Def.'s Mem. Supp.

Dismiss Compl. 3-4, 7-8.)  Assuming *arguendo*, that the Court finds both interpretations to be reasonable, the Court should deny Unifund's motion to dismiss.

When a court is faced with a contractual ambiguity, the court may consider evidence "including the overt statement and acts of the parties, *the business context, the parties' prior dealings, and industry custom.*" Julian v. Julian, Civ. No. 1892-VCP, 2010 WL 1068192, at *5 (Del. Ch. Mar. 22, 2010) (emphasis added) (quoting Bell Atl. Meridian Sys. v. Octel Commc'ns Corp., No. Civ.A. 14348, 1995 WL 707916, at *5 (Del. Ch. Nov. 28, 1995).  Moreover, a court will consider a parties' course of performance as the most persuasive form of objective evidence to discern the meaning of a contract. Julian, 2010 WL 1068192, at *5. Here, the case is in the early stages of litigation and the Court has yet to consider any extrinsic evidence in the form of discovery.  Accordingly, Unifund's motion to dismiss should be denied to the extent that issues of fact exist as to the meaning of the 2008 Agreement.

### C.   **Chase's Original Complaint Is Immaterial**

Unifund tries to make much of the fact that Chase chose to flesh out additional facts and amend its claims. (Def.'s Mem. Supp. Dismiss Compl. 6, 9-11.)  The reality is that "an amended complaint ordinarily renders the original complaint of no legal effect.  It is as though the original complaint was never served." Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 260 (2d Cir. 2002) (citing In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2d Cir. 2000)). Furthermore, for purposes of a motion to dismiss for failure to state a claim, a court will only look to the allegations in the Amended Complaint, the only pleading with legal effect. Harris v. City of N.Y., 186 F.3d 243, 249 (2d Cir. 1999).

Rule 15 of the Federal Rules of Civil Procedure permitted Chase to amend its original complaint and, by so-ordered stipulation, the parties agreed to the amendment. (Docket 17.)  See Fed. R. Civ. P. 15(c); see also Doral Produce Corp. v. Paul Steinberg Assoc., Inc., 347 F.3d 36,

39 (2d Cir. 2003) ("original and amended complaints did not furnish a reason to dismiss or discredit the amended complaint because parties are permitted by law to amend pleadings and to plead inconsistent theories").[7]

Unifund incorrectly implies that Chase alleged in its initial Complaint that Unifund was required to purchase only 70% of the charged-off accounts that Chase offered under the 2008 Agreement.   (Def.'s Mem. Supp. Dismiss Compl. 9-11.)   In its five page Complaint, Chase alleged, as it does in its more detailed eighteen page Amended Complaint, that Unifund was obligated to purchase "no less than 70% of Chase's charged-off accounts during the months January 2008 through December 2008."   (Powers Aff. Ex. D ¶ 6.)  This language is consistent with the terms of Section 2(b) of the Agreement.

However, even assuming *arguendo* that a 70% obligation existed, Unifund's claim that it purchased over 70% of the charged-off accounts *on average* is completely baseless.   (Def.'s Mem. Supp. Dismiss Compl. 11 n.5.)  Unifund calculates that it purchased on average eighty-five percent (85%) of the charged-off accounts offered by Chase through the first six months of 2008.  (Id.)  Thus, according to Unifund, it did not breach the 2008 Agreement since it purchased more than 70% of the charged-off accounts for the year prior to Chase's cancellation.   (Id.) Curiously however, Unifund provides no explanation or reference to its questionable averaging formula, nor does Unifund cite to any provision in the 2008 Agreement that permits it to average the sales volume of accounts sold.  Indeed, no such provision exists.

Unifund also argues that its efforts in March 2008 to renegotiate the terms of the 2008 Agreement, as alleged in the Amended Complaint, are irrelevant to the meaning of the 2008

---

[7] Assuming *arguendo*, that Unifund's motion to dismiss is granted, the Court should grant Chase leave to further amend its complaint to cure any pleading defects. G.R.J.H., Inc. v. Oxford Health Plans, Inc., No. 07-CV-00068 (NAM/RFT), 2009 WL 1362985, at *4 (N.D.N.Y. May 14, 2009) (permitting plaintiff to amend complaint to cure pleading defects); Tabor v. Bodisen Biotech, Inc., 579 F. Supp. 2d 438, 454 (S.D.N.Y. 2008); see also Ronzani v. Sonafi, 899 F.2d 195, 198 (2d Cir. 1990) ("[w]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint'").

Agreement since these efforts constituted "prior dealings" between Chase and Unifund. (Def.'s Mem. Supp. Dismiss Compl. 10.) Putting aside Unifund's admission that it was unhappy with the Agreement's terms and wanted them revised, it is not clear how negotiations that took place in March, some three months *after* the January 1, 2008 contract date, could be deemed *prior* dealings. Moreover, the attempt to renegotiate the contract terms, after the contract date, reflects that Unifund understood that it was obligated to purchase the charged-off accounts at the specified price. (Am. Compl. ¶¶ 58-63, 66, 77.) Unifund's actions in March 2008 reinforce that the terms of the 2008 Agreement were not illusory and that Unifund's purchase obligations were not optional. (Am. Compl. ¶¶ 58-63, 66.)

**POINT III**

**CHASE SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

As discussed in Point II above, the 2008 Agreement clearly set forth obligations for Chase to sell and for Unifund to purchase all of Chase's rights title and interest in and to eligible charged-off accounts. (Powers Aff. Ex. A § 2(b).) However, to the extent that the Court does not find such obligations are expressly contained in the 2008 Agreement, the contract contained an implied covenant of good faith and fair dealing requiring Unifund to honor the spirit of a forward flow agreement, which Unifund breached. (Am. Compl. ¶ 91.)

"The covenant of good faith and fair dealing is implied in all contracts governed by Delaware law." BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp., No. C.A. 3099-VCN, 2009 WL 264088, at *6 (Del. Ch. Feb. 3, 2009) (citing Chamison v. HealthTrust, Inc. Hosp. Co., 735 A.2d 912, 920 (Del. Ch. 1999). "[A] party to a contract has made an implied covenant to interpret and to act reasonably upon contractual language that is on its face reasonable." Chamison, 735 A.2d at 922. This covenant protects the "spirit of an

agreement when, without violating an express term of the agreement, one side uses oppressive or under-handed tactics to deny the other side the fruits of the parties' bargain." Id. (quoting Chamison, 735 A.2d at 920.) "[P]arties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms." Dunlap v. State Farm Fire and Gas. Co., 878 A.2d 434, 442 (Del. 2005) (insurer's alleged refusal to cooperate and agree to settlement for less than liability coverage limit could be a breach of implied covenant of good faith and fair dealing).

Unifund was and is a sophisticated buyer in the business of purchasing charged-off credit card accounts. The 2008 Agreement was a standard industry agreement that allowed Chase to hedge against price and other risk and committed Unifund to buying each monthly tranche of eligible charged-off accounts tendered by Chase to Unifund (also allowing Unifund to hedge against rising market prices). As alleged in the Amended Complaint, Unifund made the same commitment in each of the forward flow agreements entered into between Chase and Unifund in the prior six years. (Am. Compl. ¶ 9.) Chase relied on Unifund to act in good faith and to deal fairly in accordance with the 2008 Agreement and the long course of conduct between the parties. (Am. Compl. ¶¶ 91-96.)

However, Unifund unilaterally abandoned its obligation to purchase the charged-off accounts tendered by Chase in 2008, denying Chase the benefit of the parties' bargain and stripping Chase of the price protection and other benefits afforded under a forward flow agreement. By striping Chase of the benefits inherent in a forward flow agreement, Unifund breached the implied covenant of good faith and fair dealing in the 2008 Agreement.

Unifund argues that a claim for breach of an implied covenant of good faith and fair dealing cannot lie because existing contract terms control. (Def.'s Mem. Supp. Dismiss 11.)

However, Unifund's cited case law and interpretation of the 2008 Agreement is erroneous and ignores the unique obligations inherent in a forward flow agreement.  Cf. Twin Bridges Ltd. P'Ship v. Draper, No. Civ.A. 2351-VCP, 2007 WL 2744609 (Del. Ch. Sept. 14, 2007) (proposed integrated obligation was clearly against the intent of the parties as expressed in the agreement); Superior Vision Servs, Inc. v. Relia-Star Life Ins. Co., No. Civ.A. 1668-N, 2006 WL 2521426 (Del. Chancery Aug. 25, 2006) (same).  Unlike an ordinary contract, the fact that the parties entered into a forward flow contract is critical to understanding what the parties intended their obligations to be.  In other words, Unifund agreed to be bound not only by the express provisions in the 2008 Agreement, but also by the implied covenants of a forward flow arrangement. Implying the good faith and fair dealing obligations inherent in a forward flow agreement does not contradict any of the express terms of the agreement.  Indeed, doing so reinforces Section 2(b) of the Agreement.

Despite Unifund's attempt to rewrite the Agreement to create a purchase option, there is no express language in the 2008 Agreement giving Unifund discretion to purchase the eligible charged-off accounts offered for sale each month by Chase.  While the parties anticipated that Unifund would not be required to purchase Ineligible Accounts since those accounts were uncollectible, the parties did not anticipate and the Agreement does not reflect that Unifund would have discretion to reject eligible purchases.

Moreover, since the parties disagree about the interpretation of Unifund's obligations under the 2008 Agreement, for the purposes of this motion, Chase "is entitled to an inference that its interpretation better comports with the remaining contents of the document." Ariba, Inc. v. Electronic Data Sys. Corp., No. Civ.A. 02C-06-083 JRJ, 2003 WL 943249, at *4 (Del. Super. Ct. Mar. 7, 2003) (denied motion to dismiss claim for breach of implied covenant of good faith and fair dealing where terms of agreement were sufficiently ambiguous).

Because Chase sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing, Unifund's motion to dismiss should be denied.

## POINT IV

### CHASE SUFFICIENTLY ALLEGES A CLAIM FOR BAD FAITH

Under Delaware law, a party may bring a claim of bad faith apart from a breach of implied covenant of good faith and fair dealing claim.  Ariba, 2003 WL 943249, at *8 (denied motion to dismiss separate bad faith claim).  Although generally applied to insurance contracts, bad faith claims are also permitted in other types of contractual disputes.  Id.  See also, Int'l Fid. Ins. Co. v. Delmarva Sys. Corp., No. 99C-10-065 WCC, 2001 WL 541469, at *1 (Del. Super. Ct. May 9, 2001).  Further, "[b]ad faith is normally a question of fact which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery." Ariba, 2003 WL 943249, at *8 (quoting Everest Properties II, L.L.C. v. American Tax Credit Prop. II, L.P., No. 99C-08-122-WTQ, 2000 WL 145757, at *6 (Del. Super. Ct. Jan. 7, 2000).

Here, Chase alleges that "Unifund acted in bad faith by failing to make reasonable efforts to meet its obligations under the 2008 Agreement."  (Am. Compl. ¶ 100.)  Although Chase's bad faith claim is rooted in its breach of contract claim, the bad faith claim is a completely independent claim that can give rise to different remedies than simple breach of contract. Moreover, because bad faith is a question of fact that "generally cannot be resolved on the pleadings," Unifund's motion to dismiss should be denied since there has been no discovery. Ariba, 2003 WL 943249, at *8.

## POINT V

### THE LIMITATION OF LIABILITY
### PROVISION DOES NOT BAR RECOVERY

Unifund incorrectly argues that the damages that Chase seeks to recover are barred by the 2008 Agreement's limitation of liability provision. The 2008 Agreement does not limit the recovery of compensatory or expectation damages.

The limitation of liability provision in the 2008 Agreement provides:

> EXCEPT FOR EACH PARTY'S OBLIGATIONS UNDER SECTION 8 (Indemnification) AND PURCHASER'S OBLIGATIONS WITH RESPECT TO SELLER'S CONFIDENTIAL INFORMATION, IN NO EVENT SHALL EITHER PARTY HERETO, ITS AFFILIATES, OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES OR THIRD PARTY PROVIDERS BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR FOR ANY DAMAGES FOR LOST DATA, BUSINESS INTERRUPTION, LOST PROFITS, LOST REVENUE OR LOST BUSINESS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF WHETHER SUCH DAMAGES COULD HAVE BEEN FORESEEN OR PREVENTED BY EITHER PARTY HERETO OR WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(Powers Aff. Ex. A § 29.)

Unifund interprets Chase's damages as the difference between the revenue Chase would have received under the 2008 Agreement from Unifund and the revenue Chase actually received by selling its charged-off accounts to third-parties for the remainder of the term of the 2008 Agreement. (Def.'s Mem. Supp. Dismiss Compl. 12-13.) Unifund further argues that since Chase exercised its right to cancel the 2008 Agreement in August 2008, any damages would be limited to the charged-off accounts for July 2008 since Unifund's future obligations under the contract ceased upon Chase's cancellation of the 2008 Agreement. (Id.) Unifund concludes that

19

the only damages that Chase can recover constitute lost revenues or lost profits and, therefore, are barred by the terms of the Agreement's limitation of liability provision. (Id.)

Chase is seeking expectation and/or compensatory damages totaling approximately $11,024,872, which are not barred by the terms of the limitation of liability provision. Moreover, to the extent Chase's damages may fall within the limitation of liability provision, this provision is unenforceable since it is ambiguous and fails its essential purpose. Lastly, it is premature to dismiss the action based on the limitation of liability provision since issues of fact exist surrounding the parties' intentions in forming the Agreement, including the limitation of liability provision.

### A. Chase's Damages Are Not Barred By The Limitation Of Liability Provision

The 2008 Agreement's limitation of liability provision only bars liability in connection with the following: indirect, incidental, special, punitive or consequential damages, or for any damages for lost data, business interruption, lost profits, lost revenue, and lost business. (Powers Aff. Ex. A § 29.) The provision does not limit liability for compensatory damages (i.e. direct damages) and expectation damages. Accordingly, the limitation of liability provision does not bar Chase from recovering damages, and certainly does not warrant dismissing the action.

"Expectation damages [are] measured by the amount of money that would put the promisee in the same position as if the promisor had performed the contract." Comrie v. Enterasys Networks, Inc., 837 A.2d 1, 17 (Del. Ch. 2003) (basic rules of contract damages are "based upon the reasonable expectations of the parties *ex ante*"). See also Duncan v. Theratx, Inc., 775 A.2d 1019, 1022 (Del. 2001) (expectation damages required breaching promisor to compensate promisee for the promisee's reasonable expectation of the value of the breach).

Chase reasonably expected Unifund to perform its obligations with respect to the charged-off accounts through December 2008. Chase's cancellation of the contract in August 2008 does not relieve Unifund's obligation under the 2008 Agreement and does not preclude Chase from seeking the benefit of the bargain. In July 2008, Unifund failed to perform its contractual obligations by refusing to purchase the charged-off accounts. Chase merely seeks to be put in the same position as if Unifund had performed under the 2008 Agreement.

Similarly, compensatory damages are measured by the non-breaching party's actual loss. Strassburger v. Earley, 752 A.2d 557, 579 (Del. Ch. 2000). The loss is equal to the fair or intrinsic value of the contract at the time of the breach less the value actually received. Id. See also J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc., 1988 WL 32012, at *9 (Del. Super. Ct. Mar. 30, 1988) (compensation to the non-breaching party should be the amount required to place the party in the position it would have been in if the contract had been performed). Chase is seeking the value of the 2008 Agreement at the time of Unifund's breach less the value actually received.

Unifund argues that Chase's damages should be categorized as "lost profits" in an attempt to avoid all liability under the 2008 Agreement. The term "lost profits" is not defined in the 2008 Agreement, leaving this phrase open to interpretation and thus requiring a factual determination by the court of the parties' intention of the meaning of "lost profits" within the scope of the 2008 Agreement. See e.g. Mon River Towing, Inc. v. Salvage Co., Civ. No. 06-1499, 2010 WL 1337693, at *19 (W.D.P.A. Mar. 31, 2010) ("[e]ach proposed calculation is based on the basic principle that Lost Profits consist of Lost Revenues minus Avoided Costs"); In re Perry, 423 B.R. 215, 263 (Bankr. S.D. Tex. 2010) ("[t]he measure of damages for the loss of profits as consequential damages means net profits. Net profits means that what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business"); Appliance Giant Inc. v. Columbia 90 Assoc., LLC, 8 A.D.3d 932,

934, 779 N.Y.S. 2d 611, 613 (3d Dep't 2004) (lost profits are an item of consequential damages); Miga v. Jensen, 96 S.W.3d 207, 213 (Tex. 2002) (lost profits consist of damages for the loss of net income to a business).

In addition, the termination clause in the 2008 Agreement, which is set forth in Section 21, cuts against Unifund's argument that Chase cannot recover damages. Section 21(a), which is applicable to the termination of the Agreement by the seller (Chase), does <u>not</u> contain any language limiting the recovery of damages. However, Section 21(b), which applies to termination by the purchaser (Unifund), specifically provides in pertinent part that "Purchaser shall not be entitled to damages or any other remedy at law or in equity due to Seller's failure or refusal to offer said Unpaid Balances for sale."

Under the doctrine of *expressio unius est exclusio alterius* (the expression of the one is the exclusion of the other), the Court may reasonably infer that in Section 21(b) the parties intentionally limited Unifund's ability to recover damages against Chase, but by excluding the same provision in Section 21(a), the parties did not limit Chase's ability to recover damages against Unifund.

If the parties had intended that neither party be permitted to recover damages, then these two subsections would contain identical language. Because they do not, the Court may infer that Chase is permitted to pursue its damages claim against Unifund. <u>See</u> <u>e.g.</u> <u>Seidensticker v. Gasparilla Inn, Inc.</u>, Civ. No. 2555-CC, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007) (application of the doctrine *expressio unius est exclusion alterius*, suggested drafters of contract purposefully contemplated and excluded individuals beyond those specifically defined within definition of triggering event); <u>Millgard Corp. v. E.E. Cruz Nab Fronier-Kemper</u>, No. 99 Civ. 2952 (LBS), 2003 WL 22741664, at *7 (S.D.N.Y. Nov. 18, 2003) (under doctrine of *expressio*

*unius est exclusion alterius*, incorporation of some drawings into contract strongly suggests a decision not to include others).

Moreover, by Unifund's own logic, Section 2(b) must be subject to the terms and conditions of the termination clause in Section 21. See generally, Penn Mut. Life Ins. Co. v. T. Oglesby, II, M.D., 695 A.2d 1146, 1150 (Del. 1997 (a contract provision that is subject to the other terms and conditions is subordinated to the other terms, which control); Supermex Trading Co. v. Strategic Solutions Group, Inc., No. Civ. A. 16183, 1998 WL 229530, at *6 (Del. Ch. May 1, 1998). The parties' specific limitation of Unifund's ability to recover damages against Chase in the termination clause and the omission of a reciprocal limitation on Chase, demonstrates that the parties intended for Chase to be permitted to pursue damages against Unifund for its breach of Section 2(b).

**B.     The Limitation Of Liability Provision Is Unenforceable**

Pursuant to Delaware law, a contractual limitation of liability will not be enforced if it fails its essential purpose. J.A. Jones Constr. Co. v. City of Dover, 372 A.2d 540, 549 (Del. Super. Ct. 1977) (citing 6 Del. C. § 2-301; 6 Del. C. § 2-719(2)). In determining whether a contractual limitation of liability fails its essential purpose, Delaware courts may consider the: (i) surrounding circumstances of the contract; (ii) basic obligations of the parties; (iii) type of goods sold; (iv) uniqueness of the goods; (v) availability of the goods; and (vi) the good faith and reasonableness of the limitation on liability provision. Id. at 552. A limitation of liability clause fails its essential purpose if the breaching party does not make reasonable efforts to meet its obligations under a contract. Id.

Chase and Unifund entered into prior forward flow agreements for the sale and purchase of charged-off accounts dating back to July 2003. The terms and conditions of these prior agreements were strikingly similar to those found in the 2008 Agreement. As such, both Chase

and Unifund were fully apprised of their basic obligations and the nature of the charged-off accounts being supplied.  Aware of its obligation to purchase charged-off accounts from Chase, Unifund failed to make reasonable efforts to comply with the terms of the 2008 Agreement by refusing to purchase charged-off accounts in July 2008.

Furthermore, Delaware courts will not enforce a limitation of liability clause where a contract fails to unequivocally contemplate all possible defaults of the breaching party.  Id. at 553.  Chase and Unifund entered into a supply agreement whereby Chase supplied charged-off accounts to Unifund, and which Unifund was obligated to purchase.  The plain reading of the limitation of liability clause in the 2008 Agreement does not contemplate damages in connection with the supply or non-supply of charged-off accounts.  Indeed, discovery may reveal that Unifund breached the Agreement because it obtained comparable charged-off accounts from other suppliers at a lower price[8]; or that Unifund was unable to sell the charged-off accounts to buyers on the secondary market.  In other words, the limitation of liability clause does not contemplate the type of breach committed by Unifund, i.e. the failure to purchase proffered eligible accounts.  As such the clause fails its essential purpose.

### C.    The Action Should Not Be Dismissed At The Pleadings Stage Based On The Limitation Of Liability Provision

A determination of whether to enforce a limitation provision is generally not decided on the pleadings or on summary judgment.  J.A. Jones, 372 A.2d at 553 ("[i]t has been repeatedly recognized that the issue of whether limitation provisions are enforceable under the contractual relations of the parties and the nature of the contractual performance are matters which generally

---

[8] See e.g. M & G Polymers USA, LLC v. Carestream Health, Inc., C.A. Bo. 07C-11-242 PLA, 2009 WL 3535465, at *1 (Del. Super. Ct. June 3, 2009) (plaintiff supplier alleged defendant buyer was obligated to purchase its product but instead allegedly acted in bad faith by changing suppliers to obtain comparable goods at lower price.  Defendant argued plaintiff was precluded from damages because limitation of liability clause barred damages for claims "arising out of or in connection with the supply of goods provided for under this agreement."  Court reasoned plain reading of provision only contemplated damages in connection with the supply of goods and because issue disputed arose from the non-supply of goods due to defendant's breach, the limitation of liability clause was unenforceable).

should not be decided on the pleadings or on summary judgment"); <u>see also</u> <u>Hampton v. Warren-</u>
<u>Wolf Assoc., Inc.</u>, No. 02C-10-037WLW, 2004 WL 838847, at *3 (Del. Super. Ct. Mar. 19,
2004) (denying defendant's summary judgment to enforce limitation of liability clause where
court had no information regarding parties' contract negotiations and case was in discovery
stage); <u>M & G Polymers</u>, 2009 WL 3535465, at *7 (denying defendant's summary judgment
based on limitation of liability provision failing to contemplate all types of breaches in contract).

In this action, the pleadings are not closed and discovery has not even commenced.
Moreover, the Court has no information regarding the parties' negotiations concerning the
drafting of the limitation of liability clause in the 2008 Agreement, or the intended definitions for
the damages included therein. As such, Unifund's motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Chase respectfully requests that this Court deny defendant's
motion to dismiss the First Amended Complaint in its entirety and grant Chase such other relief
that the Court deems proper.

Dated:  Garden City, New York
       April 23, 2010

                                Respectfully submitted,
                                Stagg, Terenzi, Confusione & Wabnik, LLP

                    By:     s/ Thomas E. Stagg             
                          Thomas E. Stagg (ts-0663)
                          Haley E. Olam (ho-2482)
                          Attorneys for Plaintiff Chase Bank USA, N.A.
                          401 Franklin Avenue, Suite 300
                          Garden City, New York 11530
                          (516) 812-4500